# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vista Health Plan, Inc.,                    :
                                            :
                    Petitioner              :
                                            :
          v.                                : No. 820 C.D. 2017
                                            : Argued: October 18, 2017
Department of Human Services,               :
                                            :
                    Respondent              :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE ELLEN CEISLER, Judge[1]


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: April 11, 2018


          Vista Health Plan, Inc. (Vista) petitions for review of the order of the

Department of Human Services (Department)[2] denying Vista's bid protests

---

[1] This case was argued before an *en banc* panel of the Court that included former Judge Joseph M. Cosgrove. Because Judge Cosgrove's service on the Court ended January 1, 2018, this matter was submitted on briefs to Judge Ellen Ceisler as a member of the *en banc* panel.

[2] Pursuant to Section 201 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §61(a), "[t]he executive and administrative work of this Commonwealth shall be performed by the Executive Department, consisting of the . . . Department of Public Welfare . . . ." Pursuant to Section 103(a) of the Act of June 13, 1967, P.L. 31, added by the Act

challenging the Department's decision not to select Vista to progress to agreement negotiations in certain zones with respect to reissued Request for Proposal No. 06-15 (Reissued RFP) in which the Department sought managed care organizations (MCOs) to provide HealthChoices Physical Health Program (HealthChoices) services to Medical Assistance (MA) beneficiaries.[3]  We reverse.

---

of September 24, 2014, P.L. 2458, 62 P.S. §103(a), "[t]he Department of Public Welfare shall be known as the Department of Human Services."

[3] As this Court has explained:

> [The Department], formerly known as the Department of Public Welfare (DPW), is the state agency that administers the Commonwealth's Medicaid program.  "Medicaid is a joint state-federal funded program for [MA] in which the federal government approves a state plan for the funding of medical services for the needy and then subsidizes a significant portion of the financial obligations the state agreed to assume."  [The Department] delivers Medicaid benefits in Pennsylvania through either (1) a "fee for service" payment program, where the provider of care is paid by [the Department] on a claim-by-claim basis; or (2) a "managed care" program where [an MCO], under contract with [the Department], is paid on a monthly, fixed-fee basis per enrollee, and the MCO pays the provider pursuant to the terms of an agreement between the MCO and the provider.  Pennsylvania's Medicaid managed-care program is HealthChoices.

> * * *

> Section 443.5 of the Human Services Code, Act of June 13, 1967, P.L. 31, added by the Act of July 15, 1976, P.L. 993, 62 P.S. §443.5, relating to prepayment for contracted medical services, authorizes [the Department] to enter into contracts with insurers, such as MCOs, through a competitive bidding process.  Section 443.5 of the Human Services Code provides, in relevant part:
>> For categorically needy or medically needy persons eligible for medical assistance, prepaid capitation payments or insurance premiums for services under

2

Under the HealthChoices Program, the Department contracts with MCOs to administer health services to those eligible for Medicaid in five "Zones," Northeast, Southeast, Lehigh-Capital, Southwest, and Northwest. Currently, Vista operates as an MCO in the Southeast, Lehigh/Capital, Northeast, and Northwest Zones.

On September 16, 2015, the Department issued Request for Proposal No. 06-16 (Original RFP) seeking MCOs to administer HealthChoices in all five Zones beginning in 2017. The Original RFP stated that the Department would award three-year contracts to up to five MCOs in each Zone and identified the following criteria: (1) technical criteria comprising 80% of the total points; (2) Small Diverse Business Participation with a weight of 20% of the total points; and (3) Domestic Workforce Utilization consisting of "bonus points" to a maximum of 3% of the total points. To qualify as a responsible offeror, the Original RFP stated that an MCO's technical submission must receive a total score of at least 70% of the available points allotted in the evaluation.

On July 21, 2016, the Department issued the Reissued RFP again seeking MCOs to provide HealthChoices services to MA beneficiaries in the five Zones.[4] The Reissued RFP provides for agreements with a three-year term with an

the medical assistance State plan may be made on behalf of eligible persons *through competitive bidding* with profit or non-profit contractors, insurers, or health maintenance organizations. Profit and non-profit insurers must be approved under applicable State laws. (Emphasis added.)

*Aetna Better Health of Pennsylvania Inc. v. Department of Human Services*, (Pa. Cmwlth., No. 351 M.D. 2016, filed July 6, 2016), slip op. at 1-3 n.1, 2 (citations omitted).

[4] *See* Section 521 of the Procurement Code, 62 Pa. C.S. §521 ("[A] request for proposals or other solicitation may be canceled . . . at any time prior to the time a contract is executed by all

3

option for one additional renewal two-year term. The Department's Bureau of Financial Operations, Division of Procurement and Contract Management was the Issuing Office of the Reissued RFP, and "[t]he sole point of contact in the Commonwealth for th[e Reissued] RFP" is Erin Slabonik, the Project Officer for the Reissued RFP. Reproduced Record (R.R.) at 45a.

Initially, the Reissued RFP did not provide for a bid protest mechanism; however, the Department issued Addendum 1 to the Reissued RFP which states that "[i]n the event an Offeror elects to file a bid protest, the Department will accept the bid protest. The Department will address the merits of the bid protest if the bid protest is timely filed." R.R. at 88a.

The Reissued RFP states that the following criteria was to be used to evaluate the proposals: (1) technical criterion based on a Work Statement Questionnaire/Soundness of Approach, Personnel Qualifications and Staffing, and Prior Experience and Performance (80% or 8,000 of the possible 10,000 total points); (2) Small Diverse Business and Small Business (SDB/SB) Participation as determined by the Department of General Services' (DGS) Bureau of Diversity, Inclusion and Small Business Opportunities (BDISBO) (20% or 2,000 of the possible 10,000 total points); and (3) Domestic Workforce Utilization bonus points (up to 3% of the possible 10,000 total points). R.R. at 79a-81a. In order to be considered a responsible offeror, "and therefore eligible for selection for agreement

_____

parties when it is in the best interests of the Commonwealth. . . . The reasons for the cancellation or rejection shall be made part of the contract file."). *See also Scientific Games International, Inc. v. Department of Revenue*, 66 A.3d 740, 758 (Pa. 2013) ("The Legislature has deliberately excluded Section 521 cancellations from the scope of the right of protest. *See* 62 Pa. C.S. §1711.1(a) (prescribing that bidders, offerors, and certain others "aggrieved in connection with the solicitation or award of a contract, *except as provided in section 521 (relating to cancellation of invitations for bids or requests for proposals)*, may protest to the head of the purchasing agency in writing" (emphasis added)).").

negotiations," the total score for the technical submission in a proposal for each Zone "must be greater than or equal to 75% of the available technical points." *Id.* at 81a.

The Reissued RFP specifically provides that "[t]he Department, in its sole discretion, may undertake negotiations with Offerors whose proposals, in the judgment of the Department, show them to be qualified, responsible, and capable of providing the services." R.R. at 48a.[5] However, with respect to "Discussions for Clarification," the Reissued RFP states, "Offerors may be required to make an oral or written clarification of their proposals to the Department to ensure thorough mutual understanding and Offeror responsiveness to the solicitation requirements. The Project Officer will initiate requests for clarification." *Id.* at 54a-55a. Additionally, the Reissued RFP provides that "[f]rom the issue date of this RFP until the Department selects proposals for award, the Project Officer is the sole point of contact concerning this RFP. Any violation of this condition may be cause for the Department to reject the offending Offeror's proposal." *Id.* at 56a. Finally, the Department would "notify the selected Offerors in writing of their selection for

---

[5] Section 513(f) of the Procurement Code states:

> As provided in the [RFP], discussions and negotiations may be conducted with responsible offerors for the purpose of clarification and of obtaining best and final offers [(BAFOs)]. Responsible offerors shall be accorded fair and equal treatment with respect to any opportunity for discussion and revision of proposals. In conducting the discussions, there shall be no disclosure of any information derived from proposals submitted by competing offerors.

62 Pa. C.S. §513(f). In turn, Section 513(g) provides, "[t]he responsible offeror whose proposal is determined in writing to be the most advantageous to the purchasing agency, taking into consideration price and all evaluation factors, shall be selected for contract negotiations." 62 Pa. C.S. §513(g).

negotiations after determining those proposals that are most advantageous and in the best interest of MA beneficiaries and the Commonwealth." *Id.* at 58a.

The Department received proposals from eleven different MCOs: nine for the Southeast Zone; ten for the Lehigh/Capital Zone; seven for the Southwest Zone; six for the Northwest Zone; and seven for the Northeast Zone. Vista submitted a proposal in response to the Reissued RFP to provide services in all five Zones. Likewise, Pennsylvania Health & Wellness, Inc. (PHW) sought to provide services in all five Zones. On November 18, 2016, the Project Officer notified Vista that its "proposals were not among those proposals determined to be the most advantageous to the Commonwealth," and four other MCOs filed a bid protest based on the Department's November Selection Memorandum to which Vista responded.

However, the November Selection Memorandum revealed that BDISBO scored the SDB/SB portion of the proposals on a 200-point scale and not a 2,000-point scale as provided in the Reissued RFP. On December 12, 2016, the Department notified BDISBO of the scoring error and asked BDISBO to correct the mistake. On December 15, 2016, the Department's Secretary and DGS's Secretary notified Vista that the November Selection Memorandum would be rescinded due to the error in scoring. As a result, the Department did not issue a written determination of the bid protests stemming from the November Selection Memorandum.

On December 19, 2016, Leesa Allen, the Department's Deputy Secretary for the Office of Medical Assistance Programs (OMAP), and Sallie Rodgers, Deputy Chief Counsel in the Department's Office of General Counsel, met with Michael Neidorff, Chairman and CEO of Centene Corporation (Centene), PHW's parent corporation, and Brent Layton, an Executive Vice President and the

6

Chief Business Development Officer of Centene. R.R. at 488a-495a. Deputy Secretary Allen requested the meeting with PHW to discuss PHW's operational readiness to operate as an MCO on a statewide basis. *Id.* at 492a-493a. Allen was concerned about PHW's readiness because of: the abbreviated time frame for the implementation of the HealthChoices Program agreements; the significant amount of resources that were necessary for a successful Readiness Review; the planned implementation of Community HealthChoices Program (CHC), a new managed care initiative separate from the HealthChoices Program that will begin implementation in 2018 and for which PHW is a selected offeror in all five Zones; and the fact that PHW was a new plan coming into the HealthChoices Program. *Id.* at 493a.

From Layton's perspective, the December 19th meeting with the Department's Deputy Secretary and Deputy Chief Counsel was generally about PHW's readiness to perform in various Zones, the status of PHW's Certificate of Authority (COA) to conduct business in Pennsylvania, and its approval to operate in specific counties. R.R. at 489a.[6] Potential contracting issues in various Zones were

---

[6] Section I-4 of the Reissued RFP states, in relevant part:

> **Participation in the HealthChoices [Physical Health] Program will be limited to Commonwealth-licensed [Health Maintenance Organizations (HMOs)].** All MCOs awarded an agreement for the HealthChoices PH Program for any zone will be required to have a [COA] to operate as an HMO in Pennsylvania, as well as Pennsylvania Department of Health (DOH) operating authority in each county in each zone for which they are selected, **no later than three months prior to the anticipated implementation date of 04/01/2017. By this date, all MCOs awarded an agreement for a HealthChoices PH Zone must provide to the Department, through the Project Officer, a copy of their [COA] to operate as an HMO in Pennsylvania, as well as a copy of the correspondence from the Pennsylvania DOH granting**

7

discussed, but PHW did not modify or withdraw its proposal in any Zone. *Id.* Layton indicated that if PHW was selected by the Department to proceed to negotiations, as a new entrant into an existing market, one of the issues that it would want to understand and discuss is the Department's auto-assignment algorithm, but no specific changes to the auto-assignment algorithm were agreed to by the parties. *Id.*

On December 22, 2016, the Department issued a new December Selection Memorandum, which corrected the SDB/SB scoring and made the recommended selections of MCOs for agreement negotiations for the HealthChoices Program in all five Zones. R.R. at 91a-100a. The Department selected five MCOs in the Southeast Zone; four MCOs each in the Southwest Zone and the Lehigh/Capital Zone; and three MCOs each in the Northeast Zone and the Northwest Zone. *Id.* at 92a. Based on the Department's scoring, Vista was selected for negotiations in the Southeast, Southwest, and Northwest Zones.[7] *Id.* at 99a. Vista was not selected for negotiations in the Lehigh/Capital and Northeast Zones based on its rankings as fifth in both of those Zones. *Id.* at 96a-97a.

In contrast, although the Department's scoring of PHW's proposals were high enough for selection in all five Zones, the Department determined that PHW would participate in the Southeast, Lehigh/Capital, and Southwest Zones. R.R. at 98a. This determination was based on "discussions between [PHW] and the

---

**operating authority in each county in the Zone(s) for which they were selected for award**.

R.R. at 47a-48a (emphasis in original).

[7] The Department identified Vista through its affiliated subcontractors, AmeriHealth Caritas Health Plan and Keystone First Health Plan. *See* R.R. at 95a-99a.

Department, [in which] the Department agreed that [PHW] will participate in the Southeast, Southwest, and Lehigh/Capital zones." *Id.*

On December 29, 2016, Vista filed a Bid Protest challenging the December Selection Memorandum. R.R. at 4a-17a. Vista claimed that: (1) the process carried out by the Department in which it deselected Vista after having twice selected it for negotiations in the Northeast and Lehigh/Capital Zones is extraordinary and the Department's rescission of the November Selection Memorandum is inconsistent with its duty to carry out a fair competition in which offerors are treated equally; (2) the Department violated Section III-3[8] of the Reissued RFP because Vista was selected as a "responsible Offeror" whose proposal was "determined to be the most advantageous and in the best interests of MA beneficiaries and the Commonwealth" in the Northeast and Lehigh/Capital Zones under the two prior versions of the Reissued RFP; (3) the Department failed to properly apply the "Soundness of Approach" criteria stated in Section III-4[9] of the

---

[8] Section III-3 states, in relevant part, "[t]he Department will notify in writing of its selection for negotiations the responsible Offerors whose proposals are determined to be the most advantageous and in the best interests of MA beneficiaries and the Commonwealth as determined by the Department after taking into consideration all evaluation and selection factors." R.R. at 79a.

[9] Section III-4 states, in relevant part:

> For the Zones that an Offeror includes in its proposal, the Department's evaluation will include but is not limited to review of: Soundness of Approach, including but not limited to:
>
> • Whether the Offeror has fully and appropriately accounted for the particular and/or unique healthcare resources available to and healthcare challenges faced by MA consumers in the Zone(s), and;
>
> • Content that demonstrates how the Offeror's approach has been specifically crafted to address the particular and/or unique

Reissued RFP as evidenced by its non-selection in the Lehigh/Capital and Northeast Zones which it had previously serviced; (4) the Department violated Section 1711.1(e) and (f)[10] of the Procurement Code by failing to properly dispose of the bid protests to the November Selection Memorandum through written determination; (5) neither Section 521 of the Procurement Code nor the Reissued RFP authorized the Department's rescission of the November selection notices and the rescoring and reevaluation of bids leading to the modified December selection notices; (6) the Department's decision to decrease the number of offerors selected for negotiations in the Northeast and Capital/Lehigh Zones following the rescoring and reevaluation of the proposals was arbitrary and capricious; (7) the Department erred in its scoring and evaluation, or rescoring and reevaluation, of the SDB/SB and/or technical submittals because it was not fair to all offerors, the Department failed to properly investigate or consider relevant information, and the Department failed to inform offerors regarding the process that was used; (8) the Department improperly failed to vet and verify the transition plans of offerors in Zones where they are not currently serving as MCOs under the HealthChoices Program; and (9) the Department's

> demographic, cultural, economic, geographic, or other relevant characteristics of the regions, counties and municipalities comprising the Zones(s)[, and;]
>
> • Whether the Offeror had fully and appropriately demonstrated how its past performance had improved quality, access and value for a similar program.

R.R. at 79a-80a.

[10] 62 Pa. C.S. §1711.1(e), (f). Section 1711.1(e) and (f) states, in relevant part, "[t]he head of the purchasing agency or his designee shall review the protest and any response or reply," and "[u]pon completing an evaluation of the protest in accordance with subsection (e), the head of the purchasing agency or his designee shall issue a written determination stating the reasons for the decision."

removal of the "Heritage Factor" as a consideration from the Reissued RFP created an anti-incumbent bias which allowed non-incumbents to benefit more from the SDB/SB formula than incumbents. *Id.* at 9a-16a. Vista also reserved its right to request an evidentiary hearing and file additional protests, and requested the production of all documents considered by the Department in its evaluation of the bid protest and that Vista be selected for contract negotiations in the Northeast and Lehigh/Capital Zones. *Id.* at 16a-17a. Geisinger Health Plan (Geisinger), Gateway Health Plan, Inc. (Gateway), PHW, and OMAP filed responses to Vista's bid protest outlining various reasons why the protest should be denied, *id.* at 18a-35a, 378a-382a, 419a-423a, 439a-440a, and Vista replied to the responses, *id.* at 217a-227a.

On January 6, 2017, Vista filed another Bid Protest challenging the December Selection Memorandum. R.R. at 228a-232a. Vista asserted that it had learned through a bid protest filed by Aetna Better Health of Pennsylvania, Inc. (Aetna) that Department had issued Addendum #1 to the Reissued RFP as a result of improper communications between the Department and Aetna in violation of Section I-21 of the Reissued RFP.[11] R.R. at 229a-231a. Vista also argued that the Department's statement that it would continue to move forward and negotiate agreements with six MCOs while a number of bid protests were pending violates the stay provisions of Section 1711.1(k) of the Procurement Code.[12] *Id.* at 231a. Vista

---

[11] Section I-21 of the Reissued RFP states, in relevant part, "[f]rom the issue date of this RFP until the Department selects proposals for award, the Project Officer is the sole point of contact concerning this RFP. Any violation of this condition may be cause for the Department to reject the offending Offeror's proposal." R.R. at 56a.

[12] 62 Pa. C.S. §1711.1(k). Section 1711.1(k) states:

> In the event a protest is filed timely under this section and until the
> time has elapsed for the protestant to file an appeal with

11

again reserved its right to request an evidentiary hearing and file additional protests, and requested the production of all documents considered by the Department in its evaluation of the bid protest. *Id.* Geisinger, PHW, and OMAP filed responses to Vista's bid protest outlining various reasons why the protest should be denied, *id.* at 233a-259a, 412a-413a, 424a-429a, and Vista replied to the responses, *id.* at 260a-268a.

On January 13, 2017, the Department held a debriefing conference regarding Vista's bid protest. R.R. at 331a-339a. On January 20, 2017, Vista filed another Bid Protest and Supplemental Protests in which it alleged: (1) the Department acted arbitrarily and capriciously in failing to give points for prior performance in meeting SDB/SB commitments as required by Section III-4(B)(7) of the Reissued RFP;[13] (2) the Department violated the "blackout" provisions of Sections I-9[14] and I-21 of the Reissued RFP that are required to be followed under Section 513 of the Procurement Code in its December 19th meeting with PHW and

Commonwealth Court, the purchasing agency shall not proceed further with the solicitation or with the award of the contract unless and until the head of the purchasing agency, after consultation with the head of the using agency, makes a written determination that the protest is clearly without merit or that award of the contract without delay is necessary to protect substantial interests of the Commonwealth.

[13] Section III-4(B)(7) states, "[t]he Offeror's prior performace in meeting its agreement obligations to [SDBs] and [SBs] will be considered by BDISBO during the scoring process. To the extent the Offeror has failed to meet prior commitments, BDISBO may recommend to the Issuing Office that the Offeror be determined non-responsible for the limited purpose of eligibility to receive [SDB] and [SB] points." R.R. at 80a-81a.

[14] Section I-9 states, in relevant part, "[i]f an Offeror has any questions regarding this RFP, the Offeror must submit the questions by email . . . to the Project Officer named in Part I, Section I-2 of the RFP." R.R. at 50a.

12

by engaging in contract negotiations regarding the auto-assignment algorithm;[15] and (3) the Department did not identify the factors and scoring of the technical portion of the proposals in the Reissued RFP thereby applying an impermissible "secret" scoring criterion.[16]  *Id.* at 270a-273a.[17]  Vista again reserved its right to request an evidentiary hearing and file additional protests, requested the production of all documents considered by the Department in its evaluation of the bid protest, and

---

[15] Vista also cited a portion of the Department's script from the Reissued RFP Preproposal Conference held on July 28, 2016, which states, in relevant part:

> As those of you who are familiar with standard procurement procedures and who may have attended such conferences previously will be aware, now that this [Reissued] RFP has been released, we have entered what is commonly referred to as a "black-out" period. This means that anyone who wishes to communicate with the Commonwealth regarding the RFP must do so by directing their inquiries to me, the Project Officer, as the sole point of contact, in the manner described in Section I-2 of the [Reissued] RFP.  It also means that my colleagues and I will ensure that we conduct today's conference in a consistent manner by following a script and procedure.

R.R. at 510a.

[16] Of the 8,000 points, the Department assigned 800 points for the Personnel component; 200 points for the Prior Experience component; and 7,000 points for the Soundness of Approach component.  R.R. at 272a.  In turn, the 7,000 total points of the Soundness of Approach component were allocated as follows:  (1) Planned Approach – 150 points; (2) Member Management – 550 points; (3) Utilization Management – 150 points; (4) Care Management – 600 points; (5) Special Needs – 300 points; (6) Coordination of Care – 400 points; (7) Quality and Performance Management – 2,325 points; (8) Provider Network Composition and Network Management – 725 points; (9) Value Based Purchasing – 1,200 points; (10) Pharmacy/Outpatient Drugs – 250 points; and (11) Management Information Systems – 350 points.  *Id.*

[17] *See Aetna Better Health of Pennsylvania Inc.*, slip op. at 31 ("At this early stage of the proceedings, the Court has real concerns about the credibility of the procurement process used for RFP 06-15.  It is apparent that, despite Aetna's objection to [the Department]'s unprecedented use of secret evaluation criterion through Aetna's bid protest . . . , [the Department] plans to move forward with the procurement.").

13

requested confirmation that the Department stay, pursuant to Section 1711.1(k) of the Procurement Code, any further contract negotiations for the Northeast and Lehigh/Capital Zones pending the resolution of the bid protests. *Id.* at 274a-275a. Geisinger, PHW, and OMAP filed responses to Vista's bid protest outlining various reasons why the protest should be denied, *id.* at 286a-349a, 414a-418a, 430a-438a, and Vista replied to the responses, *id.* at 350a-362a.

On February 28, 2017, Vista filed a Supplement in Support of Bid Protests asserting the following:

> [T]here are serious questions regarding the selection of PHW for contract negotiations in three zones that the Secretary should investigate and resolve, including but not limited to the fact that PHW's SDB/SB submittal appears, on its face, to have violated the terms of the Reissued RFP; there was a further defect in the scoring of PHW's proposal, in that the total scoring did not reflect the fact that, in the Department's view, PHW did not have the ability to perform simultaneously in all five zones for which it proposed; and the fact that the Department has provided a shifting set of explanations about its secret December 19th meeting with PHW that resulted in the Department selecting PHW for contract negotiations in three zones despite its scores in the remaining two zones, after soliciting from PHW the zones that it preferred. The fact that PHW's SDB/SB submittal was not with the SDB/SB submittals of other offerors, therefore, further calls into question whether PHW was treated differently than other offerors during this re-procurement.

R.R. at 366a.

Ultimately, on June 5, 2017, the Department's Director issued a Final Agency Determination disposing of all of Vista's bid protests. Final Agency Determination at 1-33. With respect to Vista's claims regarding the December 19th meeting, the Director initially noted that "[i]n order to protest the solicitation or

14

award of a contract or agreement, a bidder or offeror must be 'aggrieved' in connection with the solicitation or award." *Id.* at 26 (citations omitted). The Director determined that Vista was not aggrieved by any contact or discussion between OMAP and PHW because "[t]he non-selection of PHW in two of the five zones conferred a benefit or advantage to Vista by rendering an additional 'slot' available for selection," and that "[t]he only offeror that may potentially have been aggrieved by the non-selection of PHW in the Northeast and Northwest zones was PHW itself." *Id.* at 26-27. As a result, the Director concluded, "Vista was not aggrieved by not having a similar meeting with OMAP." *Id.*[18]

Alternatively, the Director rejected Vista's assertion that the December 19th meeting violated Section I-9 of the Reissued RFP because that section "outlines the procedure by which an offeror may submit questions," and it "does not prohibit the meeting or discussions between the Department and PHW." Final Agency Determination at 27. The Director also rejected Vista's assertion that it violated Section I-21 because "[t]his argument attempts to extend the scope of Part I-21 to be a mutual restriction on contact, applying equally to OMAP as to potential offerors," but "the provision does not restrict the method by which OMAP may initiate contact." *Id.*

---

[18] We find untenable the Director's determination that Vista was not "aggrieved" by the selection process. First, the Director only determined that Vista was not aggrieved with respect to the two Zones from which PHW withdrew its proposal, not addressing Vista's aggrievement with respect to the three remaining Zones. Moreover, in considering a request for a preliminary injunction with respect to the Original RFP, we held that the Department's failure to comply with the provisions of the Procurement Code, as alleged in Vista's protest herein, constitutes "irreparable injury." *See Aetna Better Health of Pennsylvania Inc.*, slip op. at 27 ("Failure to comply with a statute is sufficiently injurious to constitute irreparable harm. *Wyland v. West Shore Sch. Dist.*, 52 A.3d 572, 583 (Pa. Cmwlth. 2012).").

15

The Director also determined that the December 19th meeting did not violate the provisions of Section 513(f) of the Procurement Code, requiring that all offerors "be accorded fair and equal treatment with respect to any opportunity for discussion and revision of proposals," because Section I-17 of the Reissued RFP[19] "permits the Department to seek oral or written clarifications of an offeror's proposal to ensure mutual understanding and responsiveness to the solicitation requirements." Final Agency Determination at 27. While Section I-17 "provides that the Project Officer will initiate requests for clarification," and "[w]hile OMAP acknowledges that the December 19 meeting was initiated by Secretary Allen and not the Project Officer, both OMAP and PHW describe the primary purpose of the meeting as an inquiry into PHW's readiness to operate on a statewide basis and to ensure an adequate network of providers." *Id.* (citations omitted).

The Director also found that the Department's discussions did not violate Section 513(g) of the Procurement Code requiring the Department to select a "responsible offeror" for contract negotiations. Final Agency Determination at 27-28. The Director explained that "[t]here is a distinction between earning a score high enough in a zone to be a selected offeror under the Reissued RFP, and being able to ramp up a business operation as complex and demanding as being an MCO in both the [HealthChoices] and CHC programs." *Id.* at 27. The Director found that "[t]here is nothing improper in seeking assurance from an MCO that stands to go from zero to five zones in not just the [HealthChoices] program, but the new CHC program, as well," and that "[e]ven if the result of the December 19 meeting was that PHW was

---

[19] Section I-17 states "Offerors may be required to make an oral or written clarification of their proposals to the Department to ensure thorough mutual understanding and Offeror responsiveness to the solicitation requirements. The Project Officer will initiate requests for clarification." R.R. at 202a.

not selected in the Northeast zone or the Northwest zone, . . . such result is evidence that OMAP exercised its judgment when evaluating which proposals were most advantageous to the Commonwealth." *Id.* at 27-28.

The Director also determined that Vista "has presented no evidence that the Department offered any *quid pro quo* in exchange for PHW's non-selection in two zones or that PHW altered its proposal to withdraw from those zones," and that "[t]he December Selection Memorandum, which still lists PHW in the Northeast and Northwest zones, demonstrates that PHW did not withdraw or modify its proposals in those zones." Final Agency Determination at 28 (citations and footnote omitted). The Director explained that even if he was to accept Vista's characterization of the meeting, it was permitted under Section I-5 of the Reissued RFP, which allows the Department, "in its sole discretion, [to] undertake negotiations with Offerors whose proposals, in the judgement of the Department, show them to be qualified, responsible, and capable of providing the services," and Section 513(f) of the Procurement Code which "permits the Department to conduct 'discussions and negotiations' with responsible offerors as long as responsible offerors are accorded 'fair and equal treatment with respect to any opportunity for discussion and revision of proposals.'" *Id.* (citation omitted).

The Director also found that "the Department had discretion to engage in negotiations with PHW" at the December 19th meeting and that it did not violate Section 513(f) because "[f]air and equal treatment does not mean identical treatment." Final Agency Determination at 28 (citation omitted). The Director noted that while "[i]n the December 19 meeting, a term of the agreement was discussed, namely the auto-enrollment algorithm," the meeting did not violate "fair

17

and equal treatment" under Section 513(f) "given that no changes or agreements were made as a result of that discussion." *Id.*

The Director also rejected Vista's assertion that the December 19th meeting did not violate the automatic stay provision of Section 1711.1(k) of the Procurement Code based on Aetna's bid protest of the November Selection Memorandum. Final Agency Determination at 29. The Director explained that "[u]pon the rescission of the original sections [in that Memorandum], the protest of those selections became moot thereby eliminating any need for a written determination of those protests." *Id.* Accordingly, the Director concluded, "[e]ven if the December 19 meeting occurred while an automatic stay was in place, such a violation does not warrant the remedy of rescission sought by Vista." *Id.* Rather, he found that "[e]ven assuming a stay was in place, any violation thereof was a mere technical violation and does not warrant cancelling the selections made under the Reissued RFP." *Id.* at 30.

The Director also determined that the December 19th meeting did not violate Section I-23 and the Procurement Code regarding readiness review discussions because Section I-23 "does not prohibit the Department from engaging in readiness review prior to the selection of offerors," and that it "explicitly permits the Department to conduct this assessment before the formal readiness review period." Final Agency Determination at 30. He concluded that "[t]he discussion regarding PHW's readiness to operate on a statewide basis that occurred at the December 19 meeting was not in violation of the terms of the Reissued RFP," and that "the discussion at the December 19 meeting did not violate the Procurement Code." *Id.*

The Director also rejected Vista's claim that PHW was selected despite concerns about its ability to perform. Final Agency Determination at 31. He cited Section 513(g) of the Procurement Code and Section III-3 of the Reissued RFP, which provide for the selection of a responsible offeror whose proposal is determined to be the most advantageous to MA recipients and the Commonwealth as determined by the Department after considering all of the evaluation and selection factors, and "[n]either the Procurement Code nor the Reissued RFP requires that the highest score be chosen." *Id.* The Director found that "OMAP exercised programmatic discretion, not just across zones, but across programs in deciding to select PHW for three zones instead of five," which is "permissible under the terms of the Reissued RFP and the discretion under the Procurement Code . . . ." *Id.* Finally, the Director rejected Vista's claim that PHW's scores and ranking were disclosed prior to issuing its notices of selection, citing Deputy Secretary Allen's affidavit in which she "explicitly stated that no information was provided to PHW regarding the scores or ranking of any offeror, including PHW." *Id.*

Based on the foregoing, the Director concluded, "Vista has failed to meet its burden of demonstrating that the Department acted in a manner that was arbitrary, capricious, an abuse of discretion, or contrary to law by meeting with PHW on December 19, 2016," and that Vista's claims in this regard "are without merit." Final Agency Determination at 31. Accordingly, the Director denied Vista's bid protests. *Id.* at 33.[20]

_____

[20] The Director also denied Vista's requests for the production of documents or for an evidentiary hearing, and rejected as without merit Vista's claims that: (1) OMAP's evaluation and scoring of the technical portions of the proposals was not arbitrary, capricious, an abuse of discretion, or contrary to law; (2) the manner in which OMAP and DGS designed and scored the SDB/SB portions of the proposals was not arbitrary, capricious, an abuse of discretion, or contrary to law; (3) the design of the Reissued RFP and the scoring of the proposals did not have an anti-

In this appeal,[21, 22] Vista claims that the Director erred in denying its bid protests because the December 19th meeting between the Department's Deputy Secretary for OMAP and Deputy Chief Counsel in the Department's Office of General Counsel, and Centene's Chairman and CEO and Executive Vice President and the Chief Business Development Officer is not authorized by the Reissued RFP thereby violating the Procurement Code and the Procurement Handbook. We agree.

incumbent bias; (4) the process by which OMAP rescinded and rescored the November Selection Memorandum was appropriate and permissible under the Procurement Code; and (5) OMAP's contact with Aetna was permissible and appropriate under the Reissued RFP, did not violate a stay or blackout period, and was not arbitrary, capricious, an abuse of discretion, or contrary to law. *See* Final Agency Determination at 11-26, 32.

[21] Section 1711.1(i) of the Procurement Code states that this Court "shall hear the appeal, without a jury, on the record of determination certified by the purchasing agency," and "[s]hall affirm the determination of the purchasing agency unless it finds from the record that the determination is arbitrary and capricious, an abuse of discretion or is contrary to law." 62 Pa. C.S. §1711.1(i). *See also* Section 561 of the Procurement Code, 62 Pa. C.S. §561 ("The determinations required by the following sections are final and conclusive unless they are clearly erroneous, arbitrary, capricious or contrary to law: . . . Section 513(a) and (g) (relating to competitive sealed proposals)."). Purchasing agencies are bound by the express terms of their RFPs. *American Totalisator Co. v. Seligman*, 414 A.2d 1037, 1041 (Pa. 1980). An agency abuses its discretion when it fails to follow its own regulations and procedures. *Peoples Natural Gas Company v. Pennsylvania Public Utility Commission*, 542 A.2d 606, 608 (Pa. Cmwlth. 1988).

[22] PHW, UnitedHealthcare of Pennsylvania, Inc. (United), Geisinger, Gateway, HPP, and Aetna have intervened in Vista's appeal. Additionally, Aetna filed a petition for review in our original jurisdiction, and both Aetna and United have appealed Department orders denying their bid protests, with respect to the Reissued RFP. Their actions are lodged in this Court at Nos. 274 M.D. 2017 and 790 C.D. 2017, respectively. By Stipulation and Order approved by this Court on June 30, 2017, the Department agreed to stay all procurement activities with regard to the Reissued RFP, including negotiations of any kind or readiness review activities, until this Court's disposition of Aetna's petition for review. The Department also agreed that the existing HealthChoices agreements will remain in effect and will not be terminated.

As noted above, Section 513(f) of the Procurement Code states that "[a]s provided in the [RFP], discussions and negotiations may be conducted with responsible offerors for the purpose of clarification and of obtaining [BAFOs,[23]]" and that "[r]esponsible offerors shall be accorded fair and equal treatment with respect to any opportunity for discussion and revision of proposals." 62 Pa. C.S. §513(f). *See also* Part I, Chapter 6(B)(10)(e)(1)(f) of the Procurement Handbook ("It is imperative that offerors selected to submit a [BAFO] be accorded fair and equal treatment with respect to any opportunity for discussion and revision of proposals."). In turn, Section 513(g) provides that "[t]he responsible offeror whose

---

[23] The Procurement Code does not define "discussions," "negotiations," or "clarification." As a result, the rules of statutory construction apply. *City of Philadelphia v. City of Philadelphia Tax Review Board ex rel. Keystone Health Plan East, Inc.*, 132 A.3d 946, 952 (Pa. 2015). "'When statutory words or phrases are undefined by the statute, the Court construes the words according to their plain meaning and common usage.' A statute must be given its plain and obvious meaning." *Harmer v. Pennsylvania Board of Probation and Parole*, 83 A.3d 293, 299 (Pa. Cmwlth.), *appeal denied*, 97 A.3d 746 (Pa. 2014) (citations omitted). "[I]t is axiomatic that in determining legislative intent, all sections of a statute must be read together and in conjunction with each other, and construed with reference to the entire statute." *Hoffman Mining Company, Inc. v. Zoning Hearing Board of Adams Township*, 32 A.3d 587, 592 (Pa. 2011) (citation omitted). "Where a court needs to define an undefined term, it may consult definitions in statutes, regulations or the dictionary for guidance, although such definitions are not controlling." *Adams Outdoor Advertising, LP v. Zoning Hearing Board of Smithfield Township*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006), *appeal denied*, 923 A.2d 1175 (Pa. 2007).

"Discussion" is defined as "consideration of a question in open usu. informal debate" and "argument for the sake of arriving at truth or clearing up difficulties." *Webster's Third New International Dictionary* 648 (1976). "Negotiation" is defined as "a business transaction" and the "action or process of negotiating or of being negotiated." *Id.* at 1514. In turn, "negotiate" is defined as "to communicate or confer with another so as to arrive at the settlement of some matter;" to "meet with another so as to arrive through discussion at some kind of agreement or compromise about something." *Id. See also Black's Law Dictionary* 1150 (10th ed. 2009) (defining "negotiation" as "[a] consensual bargaining process in which parties attempt to reach agreement on a disputed or potentially disputed matter" and "[d]ealings conducted between two or more parties for the purpose of reaching an understanding."). Finally, "clarification" is defined as "the act or process of clarifying." *Id.* at 415. In turn, "clarify" is defined as "to explain clearly," to "make understandable," or "to make less complex or less ambiguous." *Id.*

proposal is determined in writing to be the most advantageous to the purchasing agency . . . shall be selected for contract negotiation." 62 Pa. C.S. §513(g).

In *Pepco Energy Services, Inc. v. Department of General Services*, 49 A.3d 488 (Pa. Cmwlth. 2012), the bidder submitted a proposal to DGS in response to an RFP seeking a Design Build Contractor to design, finance, construct, own, operate, and maintain a state-of-the-art Combined Heating, Cooling, and Power Plant to provide electricity, steam, hot and chilled water to a proposed State Correctional Facility in Montgomery County. In the proposal, Pepco stated that it was based on the understanding that it will have the opportunity to negotiate the Energy Services Agreement, the Ground Lease, and the Surety Agreement prior to selection. Ultimately, DGS rejected the proposal as non-responsive because the RFP provided that these provisions were not negotiable and the proposal's conditional language constituted an impermissible alternative proposal. Pepco filed a bid protest that DGS denied and appealed to this Court. On appeal, Pepco argued that DGS erred in rejecting the proposal as non-responsive because its attempt to negotiate key terms and conditions was valid under Section 513(g) of the Procurement Code.

With respect to subsections (f) and (g) of Section 513 of the Procurement Code, this Court explained:

> Section 513(g) of the Code [] provides that an offeror "shall be selected for contract negotiation[."] Section 513(g) of the Code first requires that the offeror be a "*responsible offeror*." (Emphasis added). The Code specifically defines "responsible offeror" as "[a]n offeror that has submitted a *responsive proposal* and that *possesses the capability to fully perform the contract requirements in all respects* and the integrity and reliability to assure good faith performance." Section 103 of the Code, 62 Pa. C.S. §103 (emphasis added). The Code further defines "responsive proposal" as "[a] proposal which *conforms in all material respects to the*

22

*requirements and criteria in the [RFP]."* *Id.* (emphasis added). By definition, therefore, if a proposal on its face does not meet the requirements and criteria of a[n RFP], then it is not considered a responsive proposal and the offeror cannot be considered a responsible offeror. Thus, read in concert with Section 103 of the Code, Section 513(g) of the Code establishes a framework whereby the issuing agency must first determine if the offeror is a responsible offeror, meaning that its proposal meets the requirements and criteria of the [RFP]. Then, the responsible offeror with the most advantageous proposal is "selected for contract negotiation." This interpretation is further supported by the language of Section 513(g), which provides that the "responsible offeror whose proposal is determined . . . to be the most advantageous . . . , *taking into consideration . . . all evaluation factors*, shall be selected for contract negotiation." . . .

[Additionally,] a[n RFP] may provide for contract negotiations. In *Language Line Services, Inc. v. Department of General Services*, 991 A.2d 383 (Pa. Cmwlth.), *appeal denied*, [13 A.3d 481 (Pa. 2010)], we noted that Section 513 of the Code allows an issuing agency "the opportunity to enter into discussions and negotiations with responsible offerors *'[a]s provided in the [RFP].'"* *Language Line Services*, 991 A.2d at 390 (emphasis added). It also provides that "[r]esponsible offerors shall be accorded fair and equal treatment." Section 513(f) of the Code. In *Language Line Services*, when considering whether the issuing agency had violated the Code and fundamental principles governing public contracting when it requested [BAFOs] from only certain bidders, this Court looked to the Code and the language of the [RFP] at issue. The language in the [RFP] in that case "specifically stated and put offerors on notice that [the issuing agency] was reserving the right to limit BAFO discussions to responsible offerors whose proposals were considered 'reasonably susceptible of being selected for award.'" *Id.* . . .

Based upon the language of Section 513(g) of the Code and our decision in *Stanton–Negley* [*Drug Company v. Department of Public Welfare*, 943 A.2d 377 (Pa.

23

Cmwlth.), *appeal denied*, 959 A.2d 321 (Pa. 2008)], it is apparent that Section 513, in itself, does not entitle an offeror to engage in contract negotiations before the issuing agency makes a determination regarding whether the offeror is a responsible offeror (*i.e.*, whether the offeror submitted a responsive or non-responsive proposal) or before the issuing agency makes a determination as to which proposal is most advantageous. An agency, however, through its [RFP], may provide offerors with an opportunity to negotiate or provide revised proposals throughout the [RFP] process. *See Stanton–Negley*.

*Pepco*, 49 A.3d at 493-94.

Thus, we rejected Pepco's "contention that under Section 513(g), following the submission of a proposal, every term of a contract becomes negotiable, including provisions that the issuing agency already identified as non-negotiable in its [RFP]." *Pepco*, 49 A.3d at 493. We also concluded "that, pursuant to the provisions of the RFP, [Pepco] had no right to negotiate the terms of the Design Build Contract and the documents appended to it." *Id.* at 494.

With respect to the December 19th meeting in this case, the Department's Director found as fact that the "Deputy Secretary [] had requested the December 19 meeting with PHW to discuss PHW's readiness to operate as an MCO on a statewide basis," and that she "was concerned with PHW's operational readiness because of 'the abbreviated time frame for the implementation of the new [] HealthChoices agreements, the significant amount of resources necessary for a successful Readiness Review, the planned implementation of CHC, and PHW coming into the HealthChoices Program as a new plan.'" Final Agency Determination at 9. The Director also found that "potential contracting issues were discussed, that PHW did not modify or withdraw its proposal in any zone, and that if selected to proceed to negotiations, PHW would 'want to understand and discuss'

24

the Department's auto-assignment algorithm, but no specific changes to the auto-assignment algorithm were agreed to.'" *Id.*

Whether the December 19th meeting between the Department's Deputy Secretary and Deputy Chief Counsel was a "discussion" or "negotiation" with PHW "for the purpose of clarification and of obtaining a [BAFO]," or merely to assist in determining whether PHW was a "responsible" bidder, within the purview of Section 513 of the Procurement Code, it is clear that the meeting violated the provisions of the Procurement Code, the RFP and the Procurement Handbook. It is true that Section I-5 of the Reissued RFP states that "[t]he Department, in its sole discretion, may undertake negotiations with Offerors whose proposals, in the judgment of the Department, show them to be qualified, responsible, and capable of providing the services." R.R. at 49a. *See also* Section I-26, *id.* at 58a ("The Department will notify the selected Offerors in writing of their selection for negotiations after determining those proposals that are most advantageous and in the best interests of MA beneficiaries and the Commonwealth."); Section III-3, *id.* at 79a ("The Department will notify in writing of its selection for negotiations the responsible Offerors whose proposals are determined to be the most advantageous and in the best interests of MA beneficiaries and the Commonwealth as determined by the Department after taking into consideration all evaluation and selection factors.").

However, Section I-2 of the Reissued RFP states that, prior to such a determination and written notification, the Department's Bureau is the Issuing Office "[t]he sole point of contact in the Commonwealth for this RFP shall be . . . the Project Officer for this RFP." R.R. at 45a. *See also* Section I-21, *id.* at 56a ("From the issue date of this RFP until the Department[] selects proposals for

25

award[,] the Project Officer is the sole point of contact concerning this RFP."). Likewise, Part I, Chapter 6(B)(2)(q) of the Procurement Handbook provides that "[t]he Issuing Office . . . [c]onducts pre-selection negotiations, if desired, consistent with the terms of the RFP." Finally, Part I, Chapter 6(B)(10)(e)(2)(c) of the Procurement Handbook states that "[t]he issuing office, or the evaluation committee chairperson or designee, will conduct the pre-selection negotiations."

With respect to the clarification of PHW's proposal, Section I-17 of the Reissued RFP specifically provides that "Offerors may be required to make an oral or written clarification of their proposals to the Department to ensure thorough mutual understanding and Offeror responsiveness to the solicitation requirements. ***The Project Officer will initiate requests for clarification***." R.R. at 55a (emphasis added). *See also* Section I-9, *id.* at 50a ("If an Offeror has any questions regarding this RFP, the Offeror must submit the questions by email . . . to the Project Officer named in Part I, Section I-2 of the RFP.").

Likewise, Part I, Chapter 6(B)(2)(m) of the Procurement Handbook states that "[t]he Issuing Office: . . . [r]equests clarification of proposals from offerors as determined necessary to ensure responsiveness to the solicitation and thorough understanding of the proposals." Additionally, Part I, Chapter 6(B)(3)(b)(2) of the Procurement Handbook states that "[i]f clarification of a proposal is needed, [the Evaluation Committee] communicates the need for clarification to the issuing office and assists the issuing office in communicating with those offerors whose proposals need clarification." *See also* Part I, Chapter 6(B)(10)(c)(1) and (2) ("The evaluation committee may ask the issuing office to seek clarification from an offeror to assure full understanding of and responsiveness to

26

the RFP. . . . The issuing officer, on behalf of the evaluation committee, shall make all contacts with the offeror in writing.").

Finally, with respect to an inquiry into, or a determination of, whether PHW can adequately perform under the contract or is a "responsible offeror" under the Reissued RFP, Section I-23 states:

**I-23.** *Issuing Office Participation.*

\* \* \*

Prior to the enrollment of MA consumers in an MCO, the Department will conduct a readiness review. MA Consumers will not be able to enroll in a selected MCO and the Department will not enter into an agreement with the selected [MCO] until the Department determines that the MCO has satisfied the readiness review requirements. . . . At its discretion, the Department may commence monitoring before the effective or operational dates of the agreement, and before the formal Readiness Review period.

R.R. at 56a (emphasis added). *See also* Section III-5, *id.* at 81a, 82a ("To be responsible, an offeror must submit a responsive proposal and possess the capability to fully perform the agreement requirements in all respects and the integrity and reliability to assure good faith performance of the agreement. . . . [T]he Issuing Office will award an agreement only to those Offerors determined to be responsible in accordance with the most current version of Commonwealth Management Directive 215.9, Contractor Responsibility Program [(CRP).[24]]").

---

[24] Section 321(6) of the Procurement Code states that DGS shall "[p]articipate in the management and maintenance of a [CRP] in coordination with the Office of the Budget and other agencies as may be directed by the Governor." 62 Pa. C.S. §321(6). *See also* Section 327(b) of the Procurement Code, 62 Pa. C.S. §327(b) ("The Office of the Budget shall participate in the management and maintenance of a [CRP] in coordination with [DGS] and other agencies as may be directed by the Governor."). Management Directive 215.9 Amended from the Governor's Office establishes the policy, responsibilities, and procedures for the operation of the CRP.

Likewise, Part I, Chapter 6(B)(2)(o) of the Procurement Handbook states that "[t]he Issuing Office: . . . [m]akes a determination of offerors' responsibility in accordance with Management Directive 215.9 Amended and Part I, Chapter 14 of this handbook."[25] *See also* Part I, Chapter 6(B)(10)(e)(1)(b) of the Procurement Handbook ("In order for an offeror to participate in the [BAFO] process, the issuing office must determine that the submitted and gathered financial and other information of the offeror demonstrates that the offeror possesses the financial and technical capability, experience and qualifications to assure good faith performance of the contract.").

Based on the foregoing, it is clear that the Director erred in denying Vista's bid protests. The December 19th meeting between the Department's Deputy Secretary for OMAP and Deputy Chief Counsel in the Department's Office of General Counsel, and Centene's Chairman and CEO and Executive Vice President and the Chief Business Development Officer, which occurred after the bids had been opened, but before PHW was found to be a "responsible offeror" and before its proposal was determined to be responsive or the most advantageous, was not authorized by the Reissued RFP thereby violating the Procurement Code and the

---

[25] Part I, Chapter 14(C)(1) of the Procurement Handbook provides:

> Since the [Procurement] Code requires award to a "responsible" bidder or offeror, purchasing agencies are explicitly required to make an affirmative determination of a bidder or offeror's responsibility prior to award. Further, purchasing agencies are required to make a responsibility determination prior to requesting a [BAFO] when the [RFP] method of procurement is utilized. Determining responsibility is an affirmative duty, and the purchasing agency may not presume that all bidders or offerors are responsible.

Procurement Handbook. *See, e.g.*, *Pepco*, 49 A.3d at 495 ("Based upon the numerous provisions of the RFP summarized above, we must conclude that the provisions of the RFP did not entitle Petitioner to engage in contract negotiations *before* the Department made a determination regarding whether Petitioner was a responsible offeror who submitted a responsive proposal or *before* the Department made a determination as to which proposal was most advantageous.") (emphasis in original).[26]

As a result, the Department's order denying Vista's bid protests will be reversed. *See American Totalisator Co.*, 414 A.2d at 1041 ("When competitive bidding is used and the procedures followed emasculate the benefits of such bidding, we believe judicial intervention is proper."); *Hanisco v. Township of Warminster*, 41 A.3d 116, 123 (Pa. Cmwlth. 2012) ("A deviation from competitive bidding will not be countenanced even where there is no evidence of fraud or favoritism."). *See also* Section 1711.1(j) of the Procurement Code, 62 Pa. C.S. §1711.1(j) ("[I]f the court determines that the solicitation or award of a contract is contrary to law, then

---

[26] *See also Stapleton v. Berks County*, 593 A.2d 1323, 1331 (Pa. Cmwlth. 1991) ("We recognize that the procurement process for a complex contract such as the one negotiated in this case will necessitate some procedures which are not the norm. For this reason we do not find it objectionable that the county did not require bid or performance bonds in this case. . . . The events which transpired after the bids were opened are another matter. Private meetings and negotiations with some bidders to the exclusion of others before the contract is awarded is precisely the sort of favoritism and unfair advantage that *Harris*[ *v. Philadelphia*, 129 A. 460 (Pa. 1925)] and its progeny disdained."); *Conduit and Foundation Corp. v. City of Philadelphia*, 401 A.2d 376, 380 (Pa. Cmwlth. 1979) ("[W]e believe that the case falls, by analogy, under the line of cases raising the issue, not as to the city's discretion, but as to whether a bidder had a competitive advantage in preparing his bid because of the city's incomplete or misleading bid specifications or the city's having negotiated after the formal bid-opening.") (citations omitted).

the remedy the court shall order is limited to canceling the solicitation or award and declaring void any resulting contract.").[27]

Accordingly, the Department's order is reversed.

_____
MICHAEL H. WOJCIK, Judge

Judge Cohn Jubelirer did not participate in the decision of this case.
Judge Fizzano Cannon did not participate in the decision of this case.

---

[27] Based on our disposition of Vista's claim with respect to the Department's violation of the Reissued RFP, the Procurement Code, and the Procurement Handbook, we will not address the remaining claims in this appeal. *See, e.g., Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission*, 529 A.2d 1176, 1178 (Pa. Cmwlth. 1987) ("As the Commission points out, our Supreme Court has held with finality that the original jurisdiction of this Court is limited in matters involving Commonwealth agencies to those actions not within our appellate jurisdiction. We conclude that Peoples' Petition clearly sets forth the matter for our appellate review; therefore, we must sustain the demurrer. [Our ruling with respect to the demurrer makes it unnecessary for us to rule upon the Commission's other objections.]") (citation omitted).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vista Health Plan, Inc.,      :
     :
             Petitioner      :
     :
             v.      : No. 820 C.D. 2017
     :
Department of Human Services,      :
     :
             Respondent :

## O R D E R

AND NOW, this 11th day of April, 2018, the order of the Department of Human Services dated June 5, 2017, denying the bid protests of Vista Health Plan, Inc. with respect to the reissued Request for Proposal No. 06-15 is REVERSED.

_____
MICHAEL H. WOJCIK, Judge